IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANGELA M. BETTI

    Plaintiff,

    v.

KAISER FOUNDATION HEALTH PLAN,
INC. aka KAISER PERMANENTE,

    Defendants.

CIV-S-03-2678 DFL DAD

MEMORANDUM OF OPINION
AND ORDER

    Plaintiff Angela Betti ("Betti") moves for reconsideration of the court's order granting defendant Kaiser Foundation Health Plan's ("KFHP") motion for summary judgment.[1]  For the reasons stated below, the court: (1) GRANTS Betti's motion for reconsideration; (2) DENIES Betti's request to amend her complaint to include a claim for hostile work environment under the ADA; and (3) GRANTS Betti's request to amend her complaint to name TPMG.

---

[1] As there is a dispute over the identify of Betti's employer and which entity was acting at any given time, the court will refer to both KFHP and The Permanente Medical Group as "Kaiser" unless it is necessary to differentiate between the two entities.

1

Dockets.Justia.com

1                                    I.

2        Betti was employed at the Kaiser facility in Stockton as a

3   psychiatric social worker's assistant, working towards licensure

4   as a licensed clinical social worker.  (Mot. at 2.)  In the

5   summer of 2002, Betti was diagnosed with post-traumatic stress

6   disorder ("PTSD").  (Kramer Decl. Ex. 9 at 15.)  During the

7   summer and early fall of 2002, Betti's supervisor, Allison Kemps,

8   received reports that Betti was coming in late and having

9   difficulty completing her paperwork during her scheduled hours.

10  (SUF ¶ 10.)  Betti missed an appointment with a client on October

11  15, 2002 and then missed a rescheduled appointment with the same

12  client on October 28, 2002.  (Kemps Decl. ¶ 7.)  Betti also

13  missed work on November 7, 2002, and on several occasions in

14  December.  (Id.)

15       A meeting was held between Kemps and Betti on January 14,

16  2003.  (SUF ¶ 14.)  Betti's schedule, her tardiness, and her

17  absences were discussed at the meeting.  (Response to SUF ¶ 14.)

18  At this point, Betti was working four ten-hour shifts each week,

19  starting at 8:30 a.m. on Monday and Wednesday mornings and 9:30

20  a.m. on Tuesdays and Thursdays.  (Kemps Decl. ¶ 8.)  During the

21  meeting, Kemps suggested that Betti switch to five eight-hour

22  shifts, which would allow her to come in later, but Betti

23  rejected this suggestion.  (Id. ¶ 9.)  The meeting ended with an

24  agreement that Betti would provide a proposed revised schedule

25  that would allow her to come in later.  (Kemps Decl. ¶ 10; Kramer

26  Decl. Ex. 5 at 59.)  However, Kemps did require that Betti come

1  in at 8:30 a.m. on Wednesday morning to be present for the

2  mandatory weekly "Child Team" meeting.  (Kramer Decl. Ex. 5 at

3  148, 224.)  Furthermore, Betti informed Kemps that she did not

4  want to give up her Monday morning assignment at August

5  Elementary School because she enjoyed the work and felt she could

6  arrive on time on Mondays.  (Id. at 122, 224-26.)

7      On February 4, 2003, another meeting was held, with Kemps,

8  Betti, and Betti's union steward and clinical supervisor, Larry

9  Meade.  (Kemps Decl. ¶ 11, Ex. 3.)  At the meeting, the parties

10  worked together to modify Betti's schedule.  (Id.)  Betti

11  submitted a new proposed schedule on February 6, 2003, which

12  pushed back her start time to 10:30 a.m. on Tuesday and Thursday.

13  (Kramer Decl. Ex. 5 at 61.)  Kemps immediately approved the

14  schedule, but informed Betti that, for administrative reasons,

15  the schedule could not be officially implemented until April.

16  (Kemps Decl. ¶ 13.)  In the meantime, Kemps offered to remove all

17  of the early morning appointment slots from Betti's schedule, but

18  Betti declined this offer.  (Id.)

19      On Wednesday February 19, 2003, Betti did not arrive at work

20  on time and missed the 8:30 a.m. meeting.  (Id. ¶ 15.)  Betti

21  also missed a client appointment scheduled at 9:45 a.m.  (Id. ¶

22  16.)  Another provider, Adam Pollack, treated the patient after

23  noticing that Betti had not arrived.  (Kramer Decl. Ex. 11 at

24  31-22; Def.'s Ex. G at 39-41.)  After twice attempting to contact

25  Betti, Kemps told the receptionist to cancel the remainder of

26  Betti's appointments for the day.  (Kemps Decl. Ex. 7.)  Betti

1  woke up at 11:00 a.m., immediately called the Kaiser

2  receptionist, and was told that Kemps had cancelled the remainder

3  of her schedule.  (Kramer Decl. Ex. 5 at 93.)  Betti then

4  contacted Kemps, who told her not to come into work for the

5  remainder of the day and directed her to obtain a note from her

6  physician explaining her tardiness.  (Id. at 93-94.)  Betti

7  returned to work the next day with the requested note.  (Kemps

8  Decl. ¶ 18.)

9      Kemps convened another meeting with Betti and Meade on

10 February 25, 2003, at which Kemps announced her intent to proceed

11 with a "corrective action plan" ("CAP") because of Betti's "gross

12 misconduct" in failing to call or appear for work on February 19,

13 2003.  (Id. ¶ 19, Ex. 9.)  Meade protested that this discipline

14 was excessive and, after some arguing back and forth, Betti and

15 Meade left the meeting.  (Id.)

16     Kemps presented Betti with the CAP at a March 6, 2003

17 meeting, where Meade was also present.  (Id. ¶ 20.)  The CAP

18 provided, among other things, that Betti would arrive on time "in

19 all circumstances."  (Id. Ex. 10.)  Betti refused to sign the CAP

20 and indicated that she intended to file a union grievance to

21 protest the discipline.  (Id. Exs. 10-11.)

22     On March 26, 2003, Betti arrived at work at least 30 minutes

23 late, missing the weekly Wednesday meeting.  (Kramer Decl. Ex. 6

24 at 166-67.)  The following day, Betti was at least 20 minutes

25 late, arriving at 10:50 or 11:00 a.m., when her modified schedule

26 required her to arrive at 10:30 a.m.  (Id. at 167-68.)  Kemps

4

1    then notified Betti in writing that there would be further

2    disciplinary proceedings.  (Kemps Decl. ¶ 21, Ex. 12.)  On March

3    31, 2003, Betti went on medical leave. (SUF ¶ 30.)

4        Starting in July 2003, Betti's counsel and counsel for TPMG,

5    Susan Spurlack, began to correspond about Betti's return to work.

6    (Supplemental Alden Decl. Ex. D.)  On August 21, 2003, Betti's

7    psychiatrist, Dr. Jurkowski, indicated that Betti could return to

8    work if two conditions were met: (1) if she were given an

9    afternoon schedule for six months to a year; and (2) if she were

10   transferred to a different clinic.  (Kemps Decl. Ex. 13.)

11       Counsel for Kaiser responded to these requests for

12   accommodation by letter on October 6, 2003.  (Supplemental Kramer

13   Decl. Ex. 13.)  Counsel stated that an afternoon schedule could

14   be accommodated, with the exception of the Wednesday morning

15   meeting.  (Id.)  The letter indicated that, despite Betti's

16   argument to the contrary, attendance at the Wednesday meeting had

17   not been waived for other staff members.  (Id.)  However, the

18   letter invited Betti to submit any "other facts" she believed

19   were relevant to the Wednesday meeting.  (Id.)

20       Counsel also responded that the second request, for a

21   transfer to a different facility, was not required under state or

22   federal law.  (Id.)  She also stated that Betti could apply for a

23   transfer, but that there were currently no openings Betti was

24   qualified to fill.  (Id.)

25       Between October 6, 2003 and November 20, 2003, counsel for

26   both parties apparently had conversations regarding Betti's

5

1  transfer, and Kaiser agreed to assist in forwarding Betti's

2  "application for transfer to either the South Sacramento or

3  Modesto Kaiser facilities." (Id. Ex. 14.)  However, counsel for

4  Kaiser indicated that Betti would not be placed at the top of the

5  list for a transfer.  (Id.)  In a letter dated November 22, 2003,

6  Betti's counsel objected to this position and argued that Betti

7  was entitled to expedited consideration because the transfer was

8  a necessary accommodation.  (Id.)  Betti's counsel reiterated

9  this argument in correspondence on December 3, 2003 and December

10  4, 2003.  (Id. Exs. 15, 16.)

11      On January 5, 2004, counsel for Kaiser informed Betti's

12  counsel that it had run a search for vacant positions at its

13  Manteca, Modesto, South Sacramento, and Sacramento facilities,

14  and found no current vacant positions for a psychiatric social

15  worker without licensure.  (Supplemental Alden Decl. Ex. C.)  The

16  letter also indicated that Kaiser had no obligation to transfer

17  Betti to an open clinical social worker position, which requires

18  licensure.  (Id.)  However, Kaiser indicated that it was willing

19  to explore positions in locations other than those indicated or

20  other job classifications for which Betti might be qualified.

21  (Id.)  Kaiser again reiterated, on January 13, 2004, that it had

22  searched for vacant positions, that no vacant positions were

23  currently available, and that it was willing to look at other

24  positions and locations.  (Id., Ex. B.)  Kaiser also indicated

25  that it would notify Betti if a position became available.  (Id.)

26      Betti's first amended complaint, naming KFHP as a defendant,

1  was filed on January 21, 2004 and raises two claims: (1) that

2  KFHP failed to provide a reasonable accommodation for Betti's

3  disability in violation of the ADA, 42 U.S.C. §§ 12101 *et seq.*;

4  and (2) that KFHP refused to provide a reasonable accommodation

5  for Betti's disability in violation of the California Fair

6  Employment and Housing Act ("FEHA"), Cal. Gov. Code §§ 12900 *et*

7  *seq.*

8      On June 6, 2005, Kasier moved for summary judgment.  In that

9  motion, Kaiser argued that: (1) it provided a reasonable

10 accommodation to Betti; (2) Betti could not perform the essential

11 functions of her job, with or without modifications; and (3) it

12 was not Betti's employer.  (Mot. for Summ. J. at 2.)   The court

13 granted summary judgment, finding that Betti's requested transfer

14 was not a reasonable accommodation.  (7/25/2005 Order at 12.)

15 The court also found that KFHP was not Betti's employer.  (Id. at

16 13.)   The court declined to let Betti amend her complaint to name

17 TPMG as a defendant because, based on the accommodation finding,

18 any amendment would have been futile.  (Id.)

19                                II.

20     Betti moves for reconsideration of the court's order

21 granting summary judgment under Fed.R.Civ.P. 59(e) based on the

22 following arguments: (1) the court overlooked evidence crucial to

23 the reasonable accommodation finding; (2) the court cannot decide

24 whether Kaiser engaged in the interactive process as a matter of

25 law; and (3) Betti's hostile work environment claim is still

26 pending before the court.

1    There are four grounds upon which a Rule 59(e) motion may be

2  granted: (1) the motion is necessary to correct manifest errors

3  of law or fact upon which the judgment is based; (2) the moving

4  party presents newly discovered or previously unavailable

5  evidence; (3) the motion is necessary to prevent manifest

6  injustice; or (4) there is an intervening change in controlling

7  law.  McDowell v. Calderon, 197 F.3d 1253, 1254 n.1 (9th Cir.

8  1999) (quotations and citations omitted).

9  A. Reasonable Accommodation

10    In granting KFHP's motion for summary judgment, the court

11  based its reasonable accommodation decision on the fact that

12  Kaiser engaged in a good-faith interactive process.  (7/25/2005

13  Order at 10-12.)  The court found that Betti did not inform

14  Kaiser of her willingness to work in locations such as Richmond,

15  and because KFHP had no other open positions, Kaiser did all that

16  it could to accommodate her.  (Id. at 11-12.)

17    Betti argues that the court overlooked evidence showing that

18  she was willing to work in other Northern California facilities,

19  including Richmond.  First, she points to her attorney's

20  declaration in support of her opposition to summary judgment.

21  (Mot. at 7.)  In that declaration, her attorney states that "in

22  approximately October 2003, in a telephone conversation, I

23  notified Kaiser's counsel that [Betti] would accept a transfer to

24  just about any other facility in [N]orthern California."  (Kramer

25  Decl. ¶ 21.)  Second, Betti refers to her counsel's statements at

26  oral argument.  At that hearing, her attorney stated that she

8

1    told Kaiser that Betti was willing to relocate to "any facility

2    in Northern California" because "[s]he was willing to relocate to

3    keep her job." (Mot. at 8.)  Finally, Betti's counsel also

4    claims that she disclosed this fact to Kaiser in a January 20,

5    2004 letter by stating that Betti's request for relocation was

6    not limited to the Sacramento, Manteca, or Modesto offices. (Id.

7    at 9; Kramer Reconsideration Decl. Ex. 2.)

8         In response, Kaiser argues that Betti's motion for

9    reconsideration should be denied because: (1) even assuming Betti

10   told Kaiser that she would transfer to any Northern California

11   office, that request was not specific enough; (2) the court did

12   not base its decision to grant summary judgment solely on this

13   issue, but on a general finding that Kaiser did not have any

14   positions available, regardless of location; and (3) Kaiser did

15   not have any positions available for Betti, including the

16   position in Richmond. (Opp'n at 5-7.)

17        Given this record, the court grants the motion for

18   reconsideration.  In the court's defense, counsel for plaintiff

19   could have done a better job in presenting the facts in support

20   of the claim that Betti, through counsel, told Kaiser that Betti

21   would go anywhere in Northern California.[2]  Nonetheless, there is

22   evidence that the statement was made to Kaiser and which the

23   court overlooked.  If Betti told Kaiser that she would relocate

24   anywhere in Northern California, then whether Kaiser had an

25

26
        [2]  Counsel's statements at oral argument are not evidence
because counsel was not under oath.

9

1  obligation in the circumstances to share other openings with her

2  or request more specificity becomes a factual issue.  See

3  Humphrey v. Mem'l Hosp. Ass'n, 239 F.3d 1128, 1137-38 (9th  Cir.

4  2001) (finding that the ADA imposes a continuing duty to engage

5  in an interactive process with a disabled employee to attempt to

6  identify and implement reasonable accommodations).

7      Further, it is at the least unclear whether there were other

8  openings for which Betti was qualified.  In the order granting

9  summary judgment, the court re-states Kaiser's argument that

10  Kaiser did not have any open positions for Betti.  (7/25/2005

11  Order at 5.)  Kaiser argues that, based on this statement, the

12  court found that there were no positions available in any

13  location.  (Opp'n at 5.)  This is incorrect.  The court granted

14  summary judgment because Betti did not provide evidence that she

15  had communicated her willingness to work in other locations.

16  (7/25/2005 Order at 11-12.)

17      Finally, the evidence cited to support Kaiser's argument

18  that Betti was not qualified for the Richmond position is not

19  adequate to establish the point as an undisputed fact.  In her

20  declaration, Kemp states that no positions were available during

21  the time Betti sought a transfer.  However, this statement

22  appears to refer to searches made in Sacramento, South

23  Sacramento, Stockton, and Manteca.  (Kemp. Supp. Decl. ¶ 5.)

24  Therefore, considering the evidence from Betti cited above, the

25  court finds that there is an issue of material fact as to: (1)

26  whether a position was available at another Northern California

10

1  site for which Betti was qualified; and (2) whether Betti abused

2  the interactive process by failing to clearly and timely inform

3  Kaiser that she would move to other facilities.

4      Kaiser will have an opportunity to depose Betti's attorney

5  and the person she negotiated with at Kaiser.  Following the

6  depositions, Kasier may renew its motion for summary judgment if

7  appropriate.

8  B. Hostile Work Environment Claim

9      Betti also argues that she has a hostile work environment

10  claim under the ADA pending before the court.  (Mot. at 14.)  She

11  asserts that Kaiser's accusations of "gross misconduct" and

12  progressive disciplinary actions constitute harassment and

13  discrimination independent from her claim for Kaiser's failure to

14  accommodate.  (Id.)

15      The Ninth Circuit has not held that a hostile work

16  environment claim is actionable under the ADA.  See Brown v. City

17  of Tucson, 336 F.3d 1181, 1190 (9th Cir. 2003) (noting that

18  "[o]ur court has not yet held that such a claim

19  exists, let alone what its source in the statute might be. We

20  decline to do so here").  The case cited by Betti simply

21  "assum[es] without deciding that a claim for claim for harassment

22  or hostile work environment is cognizable under the ADA."  See

23  Baumgart v. State of Washington, 1999 WL 535795, at *1 (9th Cir.

24  1999).  Baumgart does not establish that a plaintiff may bring a

25  hostile work environment claim under the ADA.

26      In the FAC, Betti makes a number of references to a hostile

11

1   work environment.   (FAC ¶¶ 14, 22, 27, 39.)   However, she does

2   not make out a specific claim of hostile work environment under

3   the ADA.   In addition, she did not raise this claim in her

4   opposition to Kaiser's motion for summary judgment.   The court

5   will not allow Betti to assert this claim for the first time on a

6   motion for reconsideration.   Therefore, the court DENIES Betti's

7   request to amend her complaint to include a cause of action for

8   hostile work environment under the ADA.

9   C. Amendment to Complaint to Change Defendant

10      Betti argues that the court should grant her leave to amend

11  her complaint to change the name of the defendant from KFHP, Inc.

12  to The Permanente Medical Group, Inc. ("TPMG").   (Mot. at 16.)

13  In granting the motion for summary judgment, the court found that

14  Betti sued Kasier Permanante, an entity that does not actually

15  exist.   (7/25/2005 Order at 12.)   The court declined Betti's

16  request to amend her complaint to name TPMG because the amendment

17  would be futile.   (Id. at 13, n.4.)   However, the court based its

18  decision on the fact that, as a matter of law, Betti was not

19  denied a reasonable accommodation.   (Id.)   Because the court has

20  granted reconsideration of that issue, Betti's amendment to the

21  complaint is no longer futile.   Therefore, the court GRANTS

22  Betti's request to amend her complaint to name TPMG.

23                                III.

24      For the reasons stated above, the court: (1) GRANTS Betti's

25  motion for reconsideration; (2) DENIES Betti's request to amend

26  her complaint to include a claim for hostile work environment

1  under the ADA; and (3) GRANTS Betti's request to amend her

2  complaint to name TPMG.

3  IT IS SO ORDERED.

4  Dated: 2/14/2006

5

6

7

8                                    DAVID F. LEVI
                                     United States District Judge
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26