IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANGELA M. BETTI

    Plaintiff,

    v.

KAISER FOUNDATION HEALTH PLAN, INC. aka KAISER PERMANENTE,

    Defendants.

CIV-S-03-2678 DFL DAD

MEMORANDUM OF OPINION AND ORDER

Plaintiff Angela Betti ("Betti") moves for reconsideration of the court's order granting defendant Kaiser Foundation Health Plan's ("KFHP") motion for summary judgment.[1]  For the reasons stated below, the court: (1) GRANTS Betti's motion for reconsideration; (2) DENIES Betti's request to amend her complaint to include a claim for hostile work environment under the ADA; and (3) GRANTS Betti's request to amend her complaint to name TPMG.

---

[1] As there is a dispute over the identify of Betti's employer and which entity was acting at any given time, the court will refer to both KFHP and The Permanente Medical Group as "Kaiser" unless it is necessary to differentiate between the two entities.

1

I.

Betti was employed at the Kaiser facility in Stockton as a psychiatric social worker's assistant, working towards licensure as a licensed clinical social worker. (Mot. at 2.) In the summer of 2002, Betti was diagnosed with post-traumatic stress disorder ("PTSD"). (Kramer Decl. Ex. 9 at 15.) During the summer and early fall of 2002, Betti's supervisor, Allison Kemps, received reports that Betti was coming in late and having difficulty completing her paperwork during her scheduled hours. (SUF ¶ 10.) Betti missed an appointment with a client on October 15, 2002 and then missed a rescheduled appointment with the same client on October 28, 2002. (Kemps Decl. ¶ 7.) Betti also missed work on November 7, 2002, and on several occasions in December. (Id.)

A meeting was held between Kemps and Betti on January 14, 2003. (SUF ¶ 14.) Betti's schedule, her tardiness, and her absences were discussed at the meeting. (Response to SUF ¶ 14.) At this point, Betti was working four ten-hour shifts each week, starting at 8:30 a.m. on Monday and Wednesday mornings and 9:30 a.m. on Tuesdays and Thursdays. (Kemps Decl. ¶ 8.) During the meeting, Kemps suggested that Betti switch to five eight-hour shifts, which would allow her to come in later, but Betti rejected this suggestion. (Id. ¶ 9.) The meeting ended with an agreement that Betti would provide a proposed revised schedule that would allow her to come in later. (Kemps Decl. ¶ 10; Kramer Decl. Ex. 5 at 59.) However, Kemps did require that Betti come

2

in at 8:30 a.m. on Wednesday morning to be present for the mandatory weekly "Child Team" meeting. (Kramer Decl. Ex. 5 at 148, 224.)  Furthermore, Betti informed Kemps that she did not want to give up her Monday morning assignment at August Elementary School because she enjoyed the work and felt she could arrive on time on Mondays.  (Id. at 122, 224-26.)

On February 4, 2003, another meeting was held, with Kemps, Betti, and Betti's union steward and clinical supervisor, Larry Meade.  (Kemps Decl. ¶ 11, Ex. 3.)  At the meeting, the parties worked together to modify Betti's schedule.  (Id.)  Betti submitted a new proposed schedule on February 6, 2003, which pushed back her start time to 10:30 a.m. on Tuesday and Thursday. (Kramer Decl. Ex. 5 at 61.)  Kemps immediately approved the schedule, but informed Betti that, for administrative reasons, the schedule could not be officially implemented until April. (Kemps Decl. ¶ 13.)  In the meantime, Kemps offered to remove all of the early morning appointment slots from Betti's schedule, but Betti declined this offer.  (Id.)

On Wednesday February 19, 2003, Betti did not arrive at work on time and missed the 8:30 a.m. meeting.  (Id. ¶ 15.)  Betti also missed a client appointment scheduled at 9:45 a.m.  (Id. ¶ 16.)  Another provider, Adam Pollack, treated the patient after noticing that Betti had not arrived.  (Kramer Decl. Ex. 11 at 31-22; Def.'s Ex. G at 39-41.)  After twice attempting to contact Betti, Kemps told the receptionist to cancel the remainder of Betti's appointments for the day.  (Kemps Decl. Ex. 7.)  Betti

3

woke up at 11:00 a.m., immediately called the Kaiser receptionist, and was told that Kemps had cancelled the remainder of her schedule. (Kramer Decl. Ex. 5 at 93.) Betti then contacted Kemps, who told her not to come into work for the remainder of the day and directed her to obtain a note from her physician explaining her tardiness. (Id. at 93-94.) Betti returned to work the next day with the requested note. (Kemps Decl. ¶ 18.)

Kemps convened another meeting with Betti and Meade on February 25, 2003, at which Kemps announced her intent to proceed with a "corrective action plan" ("CAP") because of Betti's "gross misconduct" in failing to call or appear for work on February 19, 2003. (Id. ¶ 19, Ex. 9.) Meade protested that this discipline was excessive and, after some arguing back and forth, Betti and Meade left the meeting. (Id.)

Kemps presented Betti with the CAP at a March 6, 2003 meeting, where Meade was also present. (Id. ¶ 20.) The CAP provided, among other things, that Betti would arrive on time "in all circumstances." (Id. Ex. 10.) Betti refused to sign the CAP and indicated that she intended to file a union grievance to protest the discipline. (Id. Exs. 10-11.)

On March 26, 2003, Betti arrived at work at least 30 minutes late, missing the weekly Wednesday meeting. (Kramer Decl. Ex. 6 at 166-67.) The following day, Betti was at least 20 minutes late, arriving at 10:50 or 11:00 a.m., when her modified schedule required her to arrive at 10:30 a.m. (Id. at 167-68.) Kemps

4

then notified Betti in writing that there would be further disciplinary proceedings. (Kemps Decl. ¶ 21, Ex. 12.) On March 31, 2003, Betti went on medical leave. (SUF ¶ 30.)

Starting in July 2003, Betti's counsel and counsel for TPMG, Susan Spurlack, began to correspond about Betti's return to work. (Supplemental Alden Decl. Ex. D.) On August 21, 2003, Betti's psychiatrist, Dr. Jurkowski, indicated that Betti could return to work if two conditions were met: (1) if she were given an afternoon schedule for six months to a year; and (2) if she were transferred to a different clinic. (Kemps Decl. Ex. 13.)

Counsel for Kaiser responded to these requests for accommodation by letter on October 6, 2003. (Supplemental Kramer Decl. Ex. 13.) Counsel stated that an afternoon schedule could be accommodated, with the exception of the Wednesday morning meeting. (Id.) The letter indicated that, despite Betti's argument to the contrary, attendance at the Wednesday meeting had not been waived for other staff members. (Id.) However, the letter invited Betti to submit any "other facts" she believed were relevant to the Wednesday meeting. (Id.)

Counsel also responded that the second request, for a transfer to a different facility, was not required under state or federal law. (Id.) She also stated that Betti could apply for a transfer, but that there were currently no openings Betti was qualified to fill. (Id.)

Between October 6, 2003 and November 20, 2003, counsel for both parties apparently had conversations regarding Betti's

5

transfer, and Kaiser agreed to assist in forwarding Betti's "application for transfer to either the South Sacramento or Modesto Kaiser facilities." (Id. Ex. 14.) However, counsel for Kaiser indicated that Betti would not be placed at the top of the list for a transfer. (Id.) In a letter dated November 22, 2003, Betti's counsel objected to this position and argued that Betti was entitled to expedited consideration because the transfer was a necessary accommodation. (Id.) Betti's counsel reiterated this argument in correspondence on December 3, 2003 and December 4, 2003. (Id. Exs. 15, 16.)

On January 5, 2004, counsel for Kaiser informed Betti's counsel that it had run a search for vacant positions at its Manteca, Modesto, South Sacramento, and Sacramento facilities, and found no current vacant positions for a psychiatric social worker without licensure. (Supplemental Alden Decl. Ex. C.) The letter also indicated that Kaiser had no obligation to transfer Betti to an open clinical social worker position, which requires licensure. (Id.) However, Kaiser indicated that it was willing to explore positions in locations other than those indicated or other job classifications for which Betti might be qualified. (Id.) Kaiser again reiterated, on January 13, 2004, that it had searched for vacant positions, that no vacant positions were currently available, and that it was willing to look at other positions and locations. (Id., Ex. B.) Kaiser also indicated that it would notify Betti if a position became available. (Id.)

Betti's first amended complaint, naming KFHP as a defendant,

6

1  was filed on January 21, 2004 and raises two claims: (1) that
2  KFHP failed to provide a reasonable accommodation for Betti's
3  disability in violation of the ADA, 42 U.S.C. §§ 12101 *et seq.*;
4  and (2) that KFHP refused to provide a reasonable accommodation
5  for Betti's disability in violation of the California Fair
6  Employment and Housing Act ("FEHA"), Cal. Gov. Code §§ 12900 *et*
7  *seq.*

8  On June 6, 2005, Kasier moved for summary judgment.  In that
9  motion, Kaiser argued that: (1) it provided a reasonable
10 accommodation to Betti; (2) Betti could not perform the essential
11 functions of her job, with or without modifications; and (3) it
12 was not Betti's employer.  (Mot. for Summ. J. at 2.)   The court
13 granted summary judgment, finding that Betti's requested transfer
14 was not a reasonable accommodation.  (7/25/2005 Order at 12.)
15 The court also found that KFHP was not Betti's employer.  (Id. at
16 13.)  The court declined to let Betti amend her complaint to name
17 TPMG as a defendant because, based on the accommodation finding,
18 any amendment would have been futile.  (Id.)

II.

20 Betti moves for reconsideration of the court's order
21 granting summary judgment under Fed.R.Civ.P. 59(e) based on the
22 following arguments: (1) the court overlooked evidence crucial to
23 the reasonable accommodation finding; (2) the court cannot decide
24 whether Kaiser engaged in the interactive process as a matter of
25 law; and (3) Betti's hostile work environment claim is still
26 pending before the court.

7

There are four grounds upon which a Rule 59(e) motion may be granted: (1) the motion is necessary to correct manifest errors of law or fact upon which the judgment is based; (2) the moving party presents newly discovered or previously unavailable evidence; (3) the motion is necessary to prevent manifest injustice; or (4) there is an intervening change in controlling law.  McDowell v. Calderon, 197 F.3d 1253, 1254 n.1 (9th Cir. 1999) (quotations and citations omitted).

A. Reasonable Accommodation

In granting KFHP's motion for summary judgment, the court based its reasonable accommodation decision on the fact that Kaiser engaged in a good-faith interactive process.  (7/25/2005 Order at 10-12.)  The court found that Betti did not inform Kaiser of her willingness to work in locations such as Richmond, and because KFHP had no other open positions, Kaiser did all that it could to accommodate her.  (Id. at 11-12.)

Betti argues that the court overlooked evidence showing that she was willing to work in other Northern California facilities, including Richmond.  First, she points to her attorney's declaration in support of her opposition to summary judgment.  (Mot. at 7.)  In that declaration, her attorney states that "in approximately October 2003, in a telephone conversation, I notified Kaiser's counsel that [Betti] would accept a transfer to just about any other facility in [N]orthern California."  (Kramer Decl. ¶ 21.)  Second, Betti refers to her counsel's statements at oral argument.  At that hearing, her attorney stated that she

8

told Kaiser that Betti was willing to relocate to "any facility in Northern California" because "[s]he was willing to relocate to keep her job." (Mot. at 8.) Finally, Betti's counsel also claims that she disclosed this fact to Kaiser in a January 20, 2004 letter by stating that Betti's request for relocation was not limited to the Sacramento, Manteca, or Modesto offices. (Id. at 9; Kramer Reconsideration Decl. Ex. 2.)

In response, Kaiser argues that Betti's motion for reconsideration should be denied because: (1) even assuming Betti told Kaiser that she would transfer to any Northern California office, that request was not specific enough; (2) the court did not base its decision to grant summary judgment solely on this issue, but on a general finding that Kaiser did not have any positions available, regardless of location; and (3) Kaiser did not have any positions available for Betti, including the position in Richmond. (Opp'n at 5-7.)

Given this record, the court grants the motion for reconsideration. In the court's defense, counsel for plaintiff could have done a better job in presenting the facts in support of the claim that Betti, through counsel, told Kaiser that Betti would go anywhere in Northern California.[2] Nonetheless, there is evidence that the statement was made to Kaiser and which the court overlooked. If Betti told Kaiser that she would relocate anywhere in Northern California, then whether Kaiser had an

---

[2] Counsel's statements at oral argument are not evidence because counsel was not under oath.

9

obligation in the circumstances to share other openings with her or request more specificity becomes a factual issue. See Humphrey v. Mem'l Hosp. Ass'n, 239 F.3d 1128, 1137-38 (9th Cir. 2001) (finding that the ADA imposes a continuing duty to engage in an interactive process with a disabled employee to attempt to identify and implement reasonable accommodations).

Further, it is at the least unclear whether there were other openings for which Betti was qualified.  In the order granting summary judgment, the court re-states Kaiser's argument that Kaiser did not have any open positions for Betti.  (7/25/2005 Order at 5.)  Kaiser argues that, based on this statement, the court found that there were no positions available in any location.  (Opp'n at 5.)  This is incorrect.  The court granted summary judgment because Betti did not provide evidence that she had communicated her willingness to work in other locations.  (7/25/2005 Order at 11-12.)

Finally, the evidence cited to support Kaiser's argument that Betti was not qualified for the Richmond position is not adequate to establish the point as an undisputed fact.  In her declaration, Kemp states that no positions were available during the time Betti sought a transfer.  However, this statement appears to refer to searches made in Sacramento, South Sacramento, Stockton, and Manteca.  (Kemp. Supp. Decl. ¶ 5.)  Therefore, considering the evidence from Betti cited above, the court finds that there is an issue of material fact as to: (1) whether a position was available at another Northern California

10

site for which Betti was qualified; and (2) whether Betti abused the interactive process by failing to clearly and timely inform Kaiser that she would move to other facilities.

Kaiser will have an opportunity to depose Betti's attorney and the person she negotiated with at Kaiser.  Following the depositions, Kasier may renew its motion for summary judgment if appropriate.

B. Hostile Work Environment Claim

Betti also argues that she has a hostile work environment claim under the ADA pending before the court.  (Mot. at 14.)  She asserts that Kaiser's accusations of "gross misconduct" and progressive disciplinary actions constitute harassment and discrimination independent from her claim for Kaiser's failure to accommodate.  (Id.)

The Ninth Circuit has not held that a hostile work environment claim is actionable under the ADA.  See Brown v. City of Tucson, 336 F.3d 1181, 1190 (9th Cir. 2003) (noting that "[o]ur court has not yet held that such a claim exists, let alone what its source in the statute might be. We decline to do so here").  The case cited by Betti simply "assum[es] without deciding that a claim for claim for harassment or hostile work environment is cognizable under the ADA."  See Baumgart v. State of Washington, 1999 WL 535795, at *1 (9th Cir. 1999).  Baumgart does not establish that a plaintiff may bring a hostile work environment claim under the ADA.

In the FAC, Betti makes a number of references to a hostile

11

work environment.  (FAC ¶¶ 14, 22, 27, 39.)  However, she does not make out a specific claim of hostile work environment under the ADA.  In addition, she did not raise this claim in her opposition to Kaiser's motion for summary judgment.  The court will not allow Betti to assert this claim for the first time on a motion for reconsideration.  Therefore, the court DENIES Betti's request to amend her complaint to include a cause of action for hostile work environment under the ADA.

C. Amendment to Complaint to Change Defendant

Betti argues that the court should grant her leave to amend her complaint to change the name of the defendant from KFHP, Inc. to The Permanente Medical Group, Inc. ("TPMG").  (Mot. at 16.)  In granting the motion for summary judgment, the court found that Betti sued Kasier Permanante, an entity that does not actually exist.  (7/25/2005 Order at 12.)  The court declined Betti's request to amend her complaint to name TPMG because the amendment would be futile.  (Id. at 13, n.4.)  However, the court based its decision on the fact that, as a matter of law, Betti was not denied a reasonable accommodation.  (Id.)  Because the court has granted reconsideration of that issue, Betti's amendment to the complaint is no longer futile.  Therefore, the court GRANTS Betti's request to amend her complaint to name TPMG.

### III.

For the reasons stated above, the court: (1) GRANTS Betti's motion for reconsideration; (2) DENIES Betti's request to amend her complaint to include a claim for hostile work environment

12

under the ADA; and (3) GRANTS Betti's request to amend her complaint to name TPMG.

IT IS SO ORDERED.

Dated: 2/14/2006

*[signature: David F. Levi]*

DAVID F. LEVI
United States District Judge